**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 2:15-CR-72 |
| | ) | 2:23-CV-151 |
| JEREMIAH FARMER, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Jeremiah Farmer was convicted of murdering two elderly gentlemen in the course of a RICO and drug conspiracy involving the Latin Kings. His conviction and sentence were affirmed on appeal. Now before me is Farmer's section 2255 petition, but his petition suffers from numerous deficiencies: it is barred by procedural default, many claims were already addressed and rejected on direct appeal, and for those few claims that are properly brought in this motion, they fail on the merits. Therefore, the section 2255 motion will be denied. In addition, the other motions filed within the same time frame and associated with this motion also lack merit and will be denied.

**Background**

The extensive background of this case is fully set forth in my 48-page opinion denying Farmer's motion for a new trial and judgment of acquittal [DE 2765] as well as in the opinion of the Seventh Circuit. *See United States v. Farmer*, 38 F.4th 591 (7th Cir. 2022). In addressing the pending petition, I assume familiarity with those opinions, but I will recap the background that is essential for this motion under section 2255.

The fifth superseding indictment in this case charged Farmer with a RICO conspiracy due to his affiliation with the dangerous Latin King street gang and contained allegations that Farmer committed two murders (although the murders were not charged substantively) (Count 1), and conspiracy to possess with intent to distribute and distribute cocaine, marijuana, and alprazolam (Count 2). [DE 1819.]  Although Farmer went through multiple different attorneys before trial, and at times represented himself pro se, he was ably represented by attorneys Gregory Mitchell and Thomas Brandstrader during the ten-day jury trial in July 2019.  Farmer was found guilty of the racketeering conspiracy in violation of 18 U.S.C. § 1962(d) and in answer to a special interrogatory, the jury unanimously found Farmer committed the murders of Marion Lowery and Harvey Siegers while committing or attempting to commit criminal gang activity. [DE 2162.]  He was also found guilty of the drug conspiracy in violation of 21 U.S.C. § 846.  *Id.*  Farmer filed a number of post-trial motions for new trial and related arguments, and I denied all of these. [DE 2765, 2766.]

On October 27, 2020, I sentenced Farmer to a term of life imprisonment on both counts of the fifth superseding indictment.  [DE 2797.]  Farmer appealed his conviction to the Seventh Circuit, *United States v. Farmer*, 38 F.4th 591 (7th Cir. 2022), Case No. 20-3119, and an attorney filed an appellate brief on his behalf. *Id* at DE 45.  However, like his propensity to file things in this court whether he was represented by an attorney or not, Farmer made multiple pro se filings too, and the Seventh Circuit ultimately allowed Farmer to file a supplemental pro se brief.  Case No. 20-3119, DE 57.   On June

28, 2022, the Seventh Circuit denied Farmer's appeal on all grounds and entered a final

judgment and mandate against Farmer.  Case No. 20-3119, DE 102, 103, 120.  Farmer

filed a writ of certiorari with the United States Supreme Court which was denied on

February 21, 2023.  *United States v. Farmer*, No. 22-6597, 2023 WL 2124226 (Feb. 21, 2023).

After his conviction was affirmed (and before, for that matter), Farmer besieged

me with filings.  Prior to filing his section 2255, Farmer repeatedly asked for counsel

and requested a page limit in excess of 200 pages. [DE 3140, 3159, 3161, 3162, 3174.]  I

denied his request for counsel without prejudice to him filing the request after he had

filed a section 2255 motion. [DE 3150, 3160, 3163.]  I wanted to see if there were any

colorable grounds for relief before appointing an attorney for him.  As for his request to

file a brief in excess of 200 pages, I denied it, but allowed Farmer to file a 2255 motion

up to 40 pages in length. [DE 3163.]  Despite this clear directive, Farmer then tried to file

more than one section 2255 motion and memoranda in support, several in excess of 200

pages long. [DE 3164, 3175, 3252.]  I struck the additional filings [DE 3161-1, 3164-2,

3164-3, and 3175] for exceeding the page limits.  Farmer also requested to amend his

section 2255 petition, which I granted. [DE 3185, 3186.]

Because Farmer created so much confusion in the docket, on July 11, 2023, I

issued an order explaining what I considered Farmer's section 2255 motion to be: the

motion at DE 3164 (pages 1-14), the memorandum at DE 3179 (pages 11-53), the missing

two pages later provided by Farmer at DE 3178 (DE 3178-1) and the amendment at DE

3185 (pages 1-26). [DE 3190.]  In addition, in response to multiple requests from Farmer

that I mail a copy back to him of his filings, I mailed all of the aforementioned documents to Farmer that I consider to be his 2255 petition. [DE 3190.]  I also warned Farmer that in the future, he should retain a copy of any motion he files with the court. *Id.*  The government filed a timely response to the 2255 motion and mailed a copy of the response to Farmer. [DE 3217.]  Farmer then filed a reply in support of his 2255. [DE 3237.]

Farmer filed a number of other motions loosely associated with his 2255 petition which I will deal with in the conclusion of this order.

### Discussion

Habeas corpus relief under 28 U.S.C. section 2255 is reserved for "extraordinary situations."  *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996).  Generally, relief under section 2255 may only be granted if there is "an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice."  *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2007).

In assessing Farmer's motion, I am mindful of the well-settled principle that, when interpreting a pro se petitioner's section 2255 motion, district courts have a "special responsibility" to construe such pleadings liberally.  *Donald v. Cook Cnty. Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir. 1996).  On the other hand, "a district court should not 'assume the role of advocate for the pro se litigant' and may 'not rewrite a petition to include claims that were never presented.'"  *Riley v. United States*, No. 2:05-cv-380, 2006 WL 2849721, at *2 (N.D. Ind. Sept. 28, 2006) (quoting *Barnett v. Hargett*, 174

F.3d 1128, 1133 (10th Cir. 1999)).

After Farmer filed his 2255, he requested the court to appoint him counsel. [DE 3242.] A section 2255 proceeding is an independent civil suit for which there is no constitutional right to the appointment of counsel. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *Rauter v. United States*, 871 F.2d 693, 695 (7th Cir. 1989). The Seventh Circuit has repeatedly held that "a prisoner seeking a sentence reduction does not have a right to appointed counsel." *United States v. Johnson*, 304 F. App'x 464, 465 (7th Cir. 2008); *see also LaClair v. United States*, 374 F.2d 486, 489 (7th Cir. 1967) ("We hold that the law in this circuit is that appointment of counsel for indigents in habeas corpus and section 2255 proceedings rests in the sound discretion of district courts unless denial would result in fundamental unfairness impinging on due process rights."). The Court has discretion to appoint counsel for financially eligible persons in a section 2255 matter when it "determines that the interests of justice so require." 18 U.S.C. § 3006A(a)(2). In evaluating what the interests of justice require, courts typically consider: "(1) whether the merits of the claim are colorable; (2) the ability of the indigent to investigate crucial facts; (3) whether the nature of the evidence indicates that the truth will more likely be exposed where both sides are represented by counsel; (4) capability of the indigent to present the case; and (5) complexity of the legal issues raised by the complaint." *Wilson v. Duckworth*, 716 F.2d 415, 418 (7th Cir. 1983).

The interests of justice do not warrant providing Farmer with counsel. As set forth below, his claims are not even arguably colorable. In addition, Farmer has

represented himself frequently throughout this litigation and has sufficiently set forth the legal issues. Therefore, the request for counsel is denied.

Before diving into Farmer's specific arguments, I note that a motion under section 2255 generally can't be used to relitigate matters that were raised on direct appeal. *Varela v. United States*, 481 F.3d 932, 935 (7th Cir. 2007). Likewise, a claim normally may not be raised for the first time in a section 2255 motion or if it could have been raised at trial or on direct appeal. *McCoy v. United States*, 815 F.3d 292, 295 (7th Cir. 2016). Thus, claims omitted on direct appeal can be considered on collateral review *only* if the movant can show: (1) good cause for failing to raise the issue previously and actual prejudice from the alleged error; *or* (2) his actual innocence. *Bousley v. United States*, 523 U.S. 614, 622 (1998). However, that rule does not apply to claims for ineffective assistance of counsel. *See Massaro v. United States*, 538 U.S. 500, 504 (2003) (recognizing ineffective assistance of counsel claim can be raised in a section 2255 proceeding "whether or not the petitioner could have raised the claim on direct appeal").

## I.    Procedural Default

A good number of Farmer's arguments are barred because he failed to assert them on direct appeal. As I mentioned earlier, "[a] claim not raised on direct appeal generally may not be raised for the first time on collateral review and amounts to procedural default." *White v. United States*, 8 F.4th 547, 554 (7th Cir. 2021) (citing *McCoy v. United States*, 815 F.3d 292, 295 (7th Cir. 2016)); *see also Delatorre v. United States*, 847

F.3d 837, 843 (7th Cir. 2017) ("Any claim that could have been raised originally in the trial court and then on direct appeal that is raised for the first time on collateral review is procedurally defaulted."). If a petitioner has procedurally defaulted on a claim, he needs to show cause and prejudice, or a miscarriage of justice before he can raise the claim on collateral review. *Cross v. United States*, 892 F.3d 288, 294-95 (7th Cir. 2018). "To excuse a procedural default for cause and prejudice, a petitioner must demonstrate both (1) good cause for his failure to raise the defaulted claim before collateral review and (2) actual prejudice stemming from the violations alleged in the defaulted claim." *Delatorre*, 847 F.4th at 557. Alternatively, a showing of fundamental miscarriage of justice is a high bar that requires a showing of actual innocence. *White*, 8 F.4th at 557.

Farmer brought two main challenges to his conviction and sentence on appeal. The Seventh Circuit recapped his arguments as follows: "[f]irst, Farmer argues his conviction for RICO conspiracy was not supported by sufficient evidence. Second, Farmer claims the jury's special finding he murdered Lowry[1] and Siegers in connection with his membership in the Latin Kings was not supported by sufficient evidence, rendering his sentencing procedurally infirm." [Case No. 20-3119, DE 102 at 9-10.]

In his supplemental pro se brief, Farmer presented nine additional bases for appeal: (1) the government improperly used a federal task force officer to procure a search warrant; (2) I improperly denied the motion to suppress the identification sketch;

---

[1] While the Seventh Circuit consistently referred to this victim as "Lowry," this court has always referred to him as "Lowery."

7

(3) I erred in admitting evidence of a photo array identification made by a postal carrier witness; (4) I erred in admitting evidence seized during the May 2001 search of the home of Farmer's dad; (5) I wrongly declined to instruct the jury on the corroboration rule; (6) the government constructively amended the indictment; (7) I improperly imposed a leadership enhancement at sentencing; (8) the government committed prosecutorial misconduct at trial; and (9) the government gave improper closing argument. *Id.* at 10. The Seventh Circuit found "[n]one of Farmer's bases for appeal – either raised by appointed counsel or pro se – are meritorious." *Id.*

Here, Farmer has procedurally defaulted on the following challenges he brings in this section 2255 motion, because he failed to assert them in his direct appeal:

- Grounds 1 [DE 3179 at 12], 11 [*Id.* at 25], and A3 [*Id.* at 28], in which Farmer argues he should not have been sentenced for a crime (the assault of Coffman and Hemminger) that he was not charged with, are procedurally defaulted because Farmer did not raise this argument in direct appeal. In addition, I already ruled on this argument in the order disposing of Farmer's post-trial motions. [DE 2765 at 27-28.]

- Ground 6 relates to the Court adopting the Presentence Report [PSR]. [DE 3179 at 17.] Farmer did not raise this argument on appeal, and it is procedurally defaulted. To the extent Farmer is trying to raise a sufficiency of the evidence claim, this basis was already addressed and rejected by this Court and the Seventh Circuit. [DE 2765 at 27; Case 20-

3119, DE 102 at 14.]

- Ground A1 [DE 3179 at 28] alleging the Government failed to inform the trial jury that Farmer must be proved beyond a reasonable doubt is a claim that was never raised before the Seventh Circuit and therefore procedurally defaulted.  In addition, the Government *did* mention during closing arguments that Farmer must be proved guilty beyond a reasonable doubt [DE 2477 at 100] and I repeatedly instructed the jury in the jury instructions that the burden of proof was beyond a reasonable doubt [DE 2160 at 4, 15, 22, 30, 31, 35, 36, 46-48, 49-51, 52].

- Ground A2 [DE 3179 at 28, DE 3185 at 23], alleging Farmer's trial counsel told him not to take the stand and testify was never raised before the Seventh Circuit and is therefore procedurally defaulted.  Additionally, I had a colloquy with Farmer during his trial regarding his right to testify and at no point did Farmer raise any concern about not being allowed to testify. [DE 2476 at 176-77.]  Farmer answered that he was exercising his right not to testify, no one forced him or coerced him to arrive at that decision, and he was doing it knowingly and voluntarily. [*Id.* at 177.]

- The allegation that the Government committed prosecutorial misconduct because, according to Farmer, it used perjured testimony by Mr. Bruce Hendry in the grand jury to seek an indictment against Farmer is also procedurally defaulted. [DE 3179 at 45-46.] Farmer has shown no just

9

cause as to why he did not raise this issue earlier. *See Delatorre*, 847 F.3d at 843-44 (declining to excuse procedural default for claim of prosecutorial misconduct where petitioner did not show cause for failure to raise the claim previously).

In looking at all of the above-listed claims, Farmer failed to bring them either before the Seventh Circuit or this Court (or both), and he's provided no argument whatsoever that there was just cause for the default or that there was an error of constitutional proportions, or prejudice. Therefore, they are all procedurally defaulted and the Court need not consider these arguments further. *See McCleese v. United States*, 75 F.3d 1174, 1179 (7th Cir. 1996) ("Claims are reviewed individually for purposes of determining whether they overcome a procedural default; each claim must meet the cause and prejudice test."); *Williams v. United States*, 805 F.2d 1301, 1304 (7th Cir. 1986) (a district court need not reach the merits of an issue in a section 2255 proceeding unless it has been raised in a procedurally appropriate manner).

## II.    Arguments Previously Addressed

Farmer has more procedural problems. Besides the claims that are procedurally defaulted, there are a number of issues that have been previously addressed by the Seventh Circuit and this Court. "Issues that were raised on direct appeal may not be reconsidered on a § 2255 motion absent changed circumstances." *Varela*, 481 F.3d at 935; *White v. United States*, 371 F.3d 900 (7th Cir. 2004) (the court forbids a prisoner to relitigate in a collateral proceeding an issue that was decided on his direct appeal). The

following issues are banned for this structural reason:

- Grounds 7 [DE 3179 at 17], 8 [*Id.*], and 9 [*Id.* at 18], all address "misapplication" of the charges by the Government, Court, and Seventh Circuit. Construing this as an argument that there was insufficient evidence, this Court as well as the Seventh Circuit have already addressed and denied this argument. [DE 2765 at 27; Case 20-3119, DE 102 at 14.]

- Grounds 2 [DE 3179 at 12-15]; 3 [*Id.* at 16], 4 [*Id.* at 17], 5 [*Id.*], and 1 [DE 3164 at 4-5; DE 3179 at 37-38] all address alleged deficiencies in a search warrant. The Seventh Circuit addressed Farmer's pro se argument regarding execution of the search warrant, finding Farmer didn't move to suppress evidence obtained from the May 2001 search or object to its admission into evidence at trial and since on appeal, "Farmer points to no cause, good or otherwise, why he failed to raise these arguments in a timely manner and preserve them for appeal, [ ] we are precluded from reviewing this issue." [Case 20-3119, DE 102 at 16-17.]

- Ground 10 [DE 3164 at 4-5; DE 3179 at 19-20] addresses constructive amendment of the fifth superseding indictment. This argument was previously addressed and rejected by both this Court and the Seventh Circuit. [DE 2765 at 32-34; Case 20-3119, DE 102 at 19.]

- Ground 12 [DE 3179 at 26-27, 49; DE 3185 at 22] addresses appellate issues of Farmer's appellate counsel waiving oral argument during the appeal

11

against Farmer's wishes, the Seventh Circuit not allowing attorney

Grohman to withdraw, and not allowing Farmer to fire his appellate

attorney so he could proceed pro se, or have different counsel appointed

on his direct appeal.  The Seventh Circuit granted Farmer's waiver of oral

argument since he was still represented by counsel, denied Grohman

leave to withdraw, and denied Farmer leave to proceed pro se. [Case 20-

3119, DE 57, 59.]

- Farmer alleges that the Government committed prosecutorial misconduct

by constructively amending the fifth superseding indictment. [DE 3179 at

20-22.]  This argument was previously addressed and rejected by the

Seventh Circuit. [Case 20-3119, DE 102 at 22.]

Farmer cannot overcome the procedural hurdle that these issues were already

decided on his direct appeal.  *United States v. Bethany*, 975 F.3d 642, 651 (7th Cir. 2020).

## III. Actual Innocence

Farmer claims that he is actually innocent.  But there was ample evidence

presented at trial that Farmer killed the two gentlemen at the auto body shop.  Farmer

described to Gibbs shortly after the murder how good it felt to hit someone and feel his

jaw and teeth shatter, and his eyeball pop out (yet law enforcement never released any

details about the inflicted injuries).  Farmer told Gibbs that he used a hammer from the

auto body shop to beat them, and the injuries were consistent with this method of

death.  The sledge hammer recovered from a nearby garbage can in the alley had a

12

presence of a mixture from which Lowery and Siegers could not be excluded as possible DNA contributors, and one distinct profile in one sample was consistent with Lowery.

A mail carrier named Clarissa Holodick assisted the police in creating a sketch of the person she saw running scared from the direction of the car shop later on the same night of the murders. The sketch, and the release of it to the public, was important because there was also evidence that Farmer fled town after seeing the flier, and his girlfriend testified the image looked exactly like Farmer. The girlfriend, Tiffany Malinauskas, also testified that a few days after the murders, Farmer told her he wanted to turn himself in because he had killed two men with a hammer and was scared because he had dropped his sunglasses at the scene. Gibbs identified Oakley sunglasses recovered from the scene as belonging to Farmer.

There was also evidence that Farmer bragged to several people about the murders. He told Kok that the victims were snitches and he grabbed a hammer and hit both of them with it. Farmer told Davis he had killed two men and described the method by telling Davis he went into the garage and hit the guys with a sledgehammer. Farmer told Gibbs the victims were in King territory and should have known better. Farmer further said he used a hammer from the business to beat them because they were snitching. Gibbs also identified the Oakley sunglasses recovered from the scene as Farmer's sunglasses. Finally, upon his arrest and while he was being booked, Farmer told the officers "I want lethal injection. I may as well say I'm guilty and get it over with." [Tr. 1286-87.]

Despite this convincing evidence at trial, Farmer maintains "he is innocent of all said charges." [DE 3179 at 41.] "Actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or . . . expiration of the statute of limitations." *Lund v. United States*, 913 F.3d 665, 667 (7th Cir. 2019) (quotation omitted). To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* Such a claim typically requires "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). To his downfall, Farmer has not presented any new evidence whatsoever. Rather, he points out seemingly random or unconnected testimony or things in the record, but then doesn't provide any cogent reasons for why this information supposedly establishes his innocence. [DE 3179 at 41-43.]

Farmer has already argued that the evidence was insufficient to convict him in front of this court and the Seventh Circuit. [DE 2474 at 169-70, DE 2765 at 25-26; Case 20-3119, DE 102 at 22.] Those arguments were already rejected at both levels and he has not supplied any new information or evidence of his alleged innocence. In fact, there are no changed circumstances at all. To the extent Farmer has tried to characterize arguments as new reasoning that touch on his alleged innocence like his failure to have oral argument in the Seventh Circuit, or ability to proceed pro se, the identification sketch was improper, the fifth superseding indictment was inappropriately amended,

14

and the prosecutor committed misconduct, the Seventh Circuit has already rejected those arguments. [DE 20-3119, DE 102.]

## IV.    Arguments under the Sentencing Guidelines

Farmer argues this Court miscalculated his base offense level or Guidelines range and erroneously gave him an enhanced sentence. [DE 3179 at 15, DE 3185 at 25.]  This type of claim is not cognizable under section 2255.  *See United States v. Coleman*, 763 F.3d 706, 708-09 (7th Cir. 2014) (holding an erroneous determination that a petitioner was a career offender in calculating his sentence is not cognizable error under section 2255 post-*Booker* because the Guidelines are merely advisory).  Additionally, the Seventh Circuit addressed Farmer's arguments regarding his Guideline calculation, and found them lacking merit. [DE 20-3119, DE 102 at 14-16.]

In all events, Farmer's sentencing Guideline range was, quite literally, off the charts.  He topped out at a level 50.  [DE 2768 at 14.]  Of course, the Guideline maximum is level 43, so that's where he ultimately landed.  *Id*. at 15. The Seventh Circuit found that I may have been mistaken in labeling Farmer an organizer or leader. But the Circuit also said that any error was harmless. *Farmer*, 38 F.4th at 606.  This is because, no matter how one cuts it, because Farmer was found to be responsible for two murders, Farmer was maxed out under the Guidelines.  So any error in finding him to be an organizer/leader of the Latin Kings was harmless. *Id.*

## V.    Ineffective Assistance of Counsel

For a § 2255 motion claiming ineffective assistance of counsel, I must evaluate the claim under the two-prong *Strickland* test. *McDowell v. Kingston*, 497 F.3d 757, 761 (7th

15

Cir. 2007) (citing *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). "The benchmark for judging any claim to ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. Under *Strickland*, the petitioner must prove (1) that his attorney's performance fell below an objective standard of reasonableness, and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *McDowell*, 497 F.3d at 761. The petitioner bears the burden of establishing that both prongs of the test are intact. If either the performance or prejudice component of a petitioner's ineffective assistance claim is deficient, there is no need for me to evaluate the other part of the test. *Groves v. United States*, 755 F.3d 588, 591 (7th Cir. 2014); *see also Ebbole v. United States*, 8 F.3d 530, 533 (7th Cir.1993) ("A defendant's failure to satisfy either prong is fatal to his claim.").

This is a fluid standard, and "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." *Strickland*, 466 U.S. at 688-89. "Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Id.* The flexibility of this objective test is not license for a court to play Monday morning quarterback and declare unsuccessful advocacy to be unreasonable simply because it was not successful.

My review of attorney performance is "'highly deferential,' with the underlying assumption that 'counsel's conduct falls within the wide range of reasonable professional assistance.'" *United States v. Holman*, 314 F.3d 837, 840 (7th Cir. 2002) (quoting *Strickland*, 466 U.S. at 689). Counsel is "strongly presumed to have rendered adequate assistance and to have made significant decisions in the exercise of his or her reasonable professional judgment." *Cooper v. United States*, 378 F.3d 638, 641 (7th Cir. 2004). Hence, it is "not easy for a petitioner to show that his counsel's performance was objectively ineffective, as . . . '[t]he reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential.'" *Hartjes v. Endicott*, 456 F.3d 786, 790 (7th Cir. 2006) (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986)). In order to establish that counsel's performance was deficient, the defendant must show errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Hartjes*, 456 F.3d at 790.

As to the second element, a showing of prejudice as a result of counsel's ineffective assistance, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *United States v. Pergler*, 233 F.3d 1005, 1011 (7th Cir. 2000) (quoting *Strickland*, 466 U.S. at 693-94). It is not enough that a defendant "show merely that 'the errors had some conceivable effect on the outcome of the proceeding.'" *Id.* Counsel's conduct must be shown to have "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."

*Cooper*, 378 F.3d at 642 (citing *Strickland*, 466 U.S. at 686). Like the first prong, this test is also "highly deferential to counsel and presumes reasonable judgment and effective trial strategy." *Hays v. United States*, 397 F.3d 564, 568 (7th Cir. 2005).

First, Farmer has not come close to showing that his counsel's performance fell below the standard of professional norms. Nor has he shown how counsel's conduct prejudiced him, or that but for their actions, the result of the trial would have been different.

### A.    Arguments Related to TFO Gootee

Farmer has a lot of complaints that he paints as ineffective counsel that revolve around Task Force Agent Christopher Gootee. First, he complains that trial counsel should have moved for dismissal of the case due to Gootee being the lead investigator in the indictment and authorizing an "illegal" search warrant. [DE 3179 at 33.] Yet Farmer raises no legal basis on which counsel should have objected to TFO Gootee obtaining a search warrant as a TFO, and this Court isn't aware of any. [*See* 21 U.S.C. § 878 (describing the powers of enforcement personnel); Fed. R. Crim. P. Rule 41 (describing the parameters of search and seizure).]

Farmer also criticizes counsel for failing to move for dismissal due to TFO Gootee testifying he didn't know whom Farmer conspired with. [DE 3179 at 35, DE 3185 at 18.] While Gootee admitted on the stand he did not know if some of the people were members of the conspiracy in 1999, when questioned further about specific individuals, Gootee did state who he thought were members of the conspiracy. [Tr. Vol. II, DE 2469, at 148-51.] Ultimately, it doesn't matter if *Gootee* knew who Farmer was conspiring with

- the jury found that there was enough evidence that Farmer was a member of a conspiracy, and I denied Farmer's Rule 29 motion for acquittal based upon the sufficiency of evidence. [DE 2765 at 25.] There is no evidence his counsel was deficient on this basis.

Farmer also criticizes his trial counsel and argues they were ineffective for not objecting to Gootee sitting at counsel table during trial. [DE 3179 at 35, DE 3185 at 22.] The argument is a trifle. Any objection to Gootee's presence would have been swiftly rejected by me because it is well-settled that the government's lead agent may sit at counsel table during trial. *See* Fed. R. Evid. 615(2) and (3); *United States v. Adamo*, 882 F.2d 1218, 1235 (7th Cir. 1989) (noting lead agent was exempt from sequestration, finding the legislative history of Rule 615 and decisions in other circuits "make it clear that a governmental investigative agent, even though he is also a witness, may be designated to sit at the government counsel's table."). Even if this was somehow improper, Farmer doesn't explain how he was prejudiced or that there is a reasonable probability that the results of the trial would have been different if some other law enforcement agent sat at counsel table.

Farmer also argues his trial counsel should have objected to Gootee's application for a search warrant because Gootee "improperly vouched for every piece of evidence in the grand jury." [DE 3179 at 35, *see also* DE 3185 at 22.] Gootee submitted his application to the Magistrate Judge in this case, and it is appropriate for a TFO to present warrants as federal law enforcement officers and to swear to facts in the warrants.

19

Farmer also argues his counsel was ineffective for not objecting to Gootee being the lead investigator when Christopher Gootee's father, Mark Gootee, had previously investigated Farmer for the murders of Lowery and Siegers. [DE 3179 at 36, DE 3185 at 23.]  Farmer's counsel's decision to not object on this basis or cross-examine TFO Gootee about his father's previous investigation is trial strategy, and there is no indication of how this could have prejudiced Farmer.  *See Maury v. Pfister*, No. 1:17-cv-486, 2017 WL 5891197, at *10 (N.D. Ill. Nov. 29, 2017) (stating it is not objectively unreasonable for counsel to decide not to cross-examine about bias when there is no basis in fact for believing the witness is biased).  To the extent Farmer also criticizes trial counsel for not subpoenaing certain evidence [DE 3179 at 35, DE 3185 at 22], this is also trial strategy. Farmer must "present evidence to overcome the strong presumption that his attorney was engaged in reasonable trial strategy."  *United States v. Memar*, 906 F.3d 652, 659 (7th Cir. 2018).  He has failed to do so.

According to Farmer, his counsel was ineffective for failing to object to TFO Gootee "vouching" about jail calls between Farmer and other members of the Latin Kings gang. [DE 3179 at 37, DE 3185 at 22.]  The decision not to object to the admissibility of certain evidence is merely trial strategy.  *See Spiller v. United States*, 855 F.3d 751, 756 (7th Cir. 2017); *see also United States v. Berkowitz*, 927 F.2d 1376, 1382 (7th Cir. 1991) (decision whether to challenge admissibility of documents is tactical decision which we give great deference).   Even if defense counsel had objected to the authentification of the phone calls, the government almost assuredly could have laid the proper foundation, by calling a witness who was familiar with Farmer's voice to

20

authenticate the calls. This would only have highlighted the calls. Trial counsel made a

reasonable choice to not object.

Farmer also takes aim at his counsel for failing to object to witnesses called by the

government during the grand jury proceedings, and not calling these witnesses at trial.

[DE 3179 at 37-38.] The grand jury is an *ex parte* proceeding in which a defendant does

not have the right to be present or cross-examine the government's witnesses. *United*

*States v. Gardner*, 516 F.2d 334, 339 (7th Cir. 1975). Although he lists certain witnesses'

names, Farmer does not explain what they would have testified to at trial, how omitting

them prejudiced him, or whether his attorneys investigated these witnesses or

considered whether to call them. Generally, what witness to call is a quintessential trial

tactic, one that is largely sheltered from a claim of ineffective assistance of counsel

because such a decision is within the attorney's discretion. *See Menzer v. United States*,

200 F.3d 1000, 1004 (7th Cir. 2000) ("[t]rial counsel's decision not to call [] as a witness

was a reasonable strategic decision."); *United States v. Berg*, 714 F.3d 490, 499 (7th Cir.

2013) (the "Constitution does not oblige counsel to present each and every witness that

is suggested to him.").

In sum, none of these alleged errors relating to TFO Gootee show deficient

performance and Farmer also has not satisfied the second prong of the test establishing

prejudice.

###    B.    *Neapolitan* Jury Instruction

Farmer contends trial counsel should have requested a jury instruction under

*United States v. Neapolitan*, 791 F.2d 489 (7th Cir. 1986). That case held "[t]o be convicted

21

of a conspiracy to violate RICO there must be proof that the individual, by his words or actions, objectively manifested an agreement to participate, directly or indirectly, in the affairs of an enterprise, through the commission of two or more predicate crimes." *Id.* at 497 (quotation omitted). The only time the *Neapolitan* case shows up in the Seventh Circuit Pattern Jury Instructions is in a Committee Comment to the instruction for 18 U.S.C. § 1962(d) - racketeering conspiracy. I gave that exact instruction encompassed in the 18 U.S.C. § 1962(d) pattern requirement for racketeering conspiracy. [*See* DE 2160, Instr. No. 25 at p. 26.] To the extent Farmer insinuates another instruction should have been given in addition to this one, *Neapolitan* does not support that argument and Farmer's counsel was not ineffective for failing to request an additional instruction. There is no other pattern instruction Farmer points to as indispensable, nor does Farmer give any logical explanation behind his argument that if "the Neapolitan instruction was used Farmer would have prevailed." [DE 3179 at 33.]

### C.    Failure to Object to Statements from Byron Wren to Glen Kok

Farmer next claims that his trial counsel was ineffective for not objecting to the Government's use of statements from Byron Wren (who was deceased at the time of trial) to Glen Kok, a co-conspirator who did testify at trial. [DE 3179 at 34-35, DE 3185 at 6-9, 12-16.]

For co-conspirator statements to be admitted under Federal Rule of Evidence 801 (d)(2)(E), the Government must prove by a preponderance of the evidence that a conspiracy existed, that both the declarant and the defendant were members of the conspiracy, and that the statements were made in the course and in furtherance of the

22

conspiracy. *United States v. Ladd*, 218 F.3d 701, 704 (7th Cir. 2000). Co-conspirator statements are not a violation of the confrontation clause. *Bourjaily v. United States*, 483 U.S. 171 (1987) (there "can be no separate Confrontation Clause challenge to the admission of a co-conspirator's out-of-court statement . . . [because] co-conspirators' statements, when made in the course and in furtherance of the conspiracy, have a long tradition of being outside the compass of the general hearsay exclusion").

Prior to trial, the government filed a comprehensive memorandum pursuant to *United States v. Santiago*, 582 F.2d 1128 (7th Cir. 1978) which proffered evidence that established that a conspiracy existed and which set forth the co-conspirator hearsay statements it intended to offer at trial. [DE 1992.] On the morning of trial, I ruled that the government's *Santiago* proffer was sufficient to establish that a conspiracy existed and that the statements it intended to offer were made during and in furtherance of the conspiracy. [DE2131.] It was pursuant to that ruling that the government introduced the co-conspirator hearsay statements of Wren and Kok.

There was plainly a basis for admitting those statements, and trial counsel's performance cannot be deficient by failing to make a futile objection. *Carter v. Douma*, 796 F.3d 726, 735 (7th Cir. 2015); *United States v. Neeley*, 189 F.3d 670, 684 (7th Cir. 1999) ("Obviously, counsel can not be considered ineffective for failing to make an objection to the introduction of evidence that was properly admitted.").

### D.    Alleged Misstatement by Trial Attorney Mitchell

Farmer argues that Attorney Mitchell was ineffective "for doing perjury in his Rule 33 because in this Mitchell stated I plead guilty to the attempted murders of

Katrina Coffman and Kevin Hemminger this case was dismissed therefore [his attorney was] ineffective for saying I plead guilty to this [sic.] attempted murders." [DE 3179 at 36.]  I'm not exactly sure what that means.  But on my reading, Farmer's argument misstates the facts.  In the motion for new trial, Mitchell argued that Coffman's testimony about her attempted murder was inadmissible under Rule 404(b) as other bad acts, introduced only to suggest to the jury that Farmer's 2009 attempted murder of Coffman was in conformity with the charged 1999 murders of Siegers and Lowery. [DE 2291 at 9.]  Mitchell went on to note that:

> the only evidence disclosed by the government regarding this February 24, 2009, robbery, is that while defendant Farmer had been initially charged with the attempted murder, the attempted murder charge had been dropped because the victims did not and stated they could [not] identify the shooter.  Though defendant Farmer subsequently pled guilty to committing this robbery, the Fifth Superseding Indictment did not include or charge defendant Farmer with committing this offense as an overt act in furtherance of the charged Latin King RICO conspiracy, and therefore this highly prejudicial evidence should not have been admitted and resulted in a constructive amendment to the indictment.

[DE 2291 at 9.] As I read Mitchell's argument, he stated that Farmer pleaded guilty to the robbery, not that he pleaded guilty to the attempted murder of Coffman and Hemminger.  This is consistent with the PSR in this case which indicates Farmer pleaded guilty to a robbery that occurred when Farmer opened his car trunk, hit the victim several times with a tire iron, and then pulled out a gun and stole $750 from the victim.  [PSR, DE 2768, ¶ 81.]  Charges relating to the separate robbery and shooting of Coffman and Hemminger were dismissed. [*Id.* ¶ 96.] Anyway, there is nothing about this that indicates Mitchell's representation of Farmer was deficient.  Mitchell filed a

lengthy and detailed motion for a new trial, setting forth cogent arguments. [DE 2291.]

### E.    Waiving Oral Argument on Direct Appeal

According to Farmer, when his appellate counsel waived oral argument on appeal, this constituted ineffective assistance of counsel. [DE 3179 at 36, 48, DE 3185 at 22.]  This is a conclusory statement, and Farmer has not provided any argument as to how this actually was deficient performance, or how it prejudiced Farmer.  Several courts have held that waiver of oral argument is a strategic decision.  *See Hernandez v. Secretary, Florida Dept. Of Corrections*, 408 F. App'x 316, 318-19 (11th Cir. 2011) (having the opportunity to present oral argument, but waiving the right to do so, is a strategic choice subject to *Strickland*'s performance and prejudice prongs); *United States v. Neeley*, No. 00 C 6119, 2001 WL 521841, at *5 (N.D. Ill. May 14, 2001) (noting that the Seventh Circuit may order oral argument despite the agreement of the parties to submit the matter on the briefs, and failure to do so may demonstrate an implicit agreement by the Court of Appeals that oral argument is not warranted or necessary).  In this case, it seems like it was a purely strategic decicion, and one that did not cause Farmer any prejudice or affect the result of his appeal.

### F.    Failure to Call Officer White to Impeach Detective Adams

Farmer's argument is difficult to follow, but he seems to fault trial counsel for not calling Officer White to the stand to impeach Detective Adams' testimony regarding a police report that White authored, which referenced a supposed witness to the homicide, or to object to Detective Adams' testimony. [DE 3179 at 38-29, DE 3185 at 9.]  As the government notes, it would be improper to impeach Detective Adams'

testimony with a report authored by another person (Officer White). Trial counsel did

in fact ask Detective Adams about the report, and he stated he did not recall it. [DE 3179

at 38.] Again, nothing about this suggests that his attorney was ineffective.

### G.    Failure to Object to Admission of the Sketch

A line of argument that Farmer has not relinquished during this case is the

alleged impropriety of the postal worker Holodick (who saw Farmer running from the

scene of the murders) who worked with a sketch artist to create a sketch of his face. [DE

3179 at 45.] Farmer now claims his trial attorneys were ineffective for failing to object to

and suppress the identification sketch and related identification testimony. *Id.*

But Mr. Mitchell filed a well-reasoned motion to suppress back in April 2019, as

well as a reply brief in support. [DE 2009, 2063.] I held a lengthy hearing on this motion

[DE 2057] and ultimately issued an order analyzing and denying the motion to

suppress. [DE 2093.] Farmer claims the sketch resulted from unduly suggestive

procedures before the Seventh Circuit, too, claiming I was wrong in my ruling on the

motion to suppress. The Seventh Circuit reasoned:

> Farmer fails at the first step to demonstrate the procedure used to
> generate Holodick's composite sketch was 'suggestive and
> unnecessary.' First, Ellis did not know of Farmer and no officer
> suspected Farmer or showed Holodick a picture of Farmer when
> the sketch was created. Second, although Farmer argues other
> witnesses should have contributed to creating the sketch, Holodick
> was the only witness who saw any part of his face. Third, Holodick
> and Ellis testified to a long, iterative process to create the sketch
> where Holodick had the ultimate control over the final product.
> The district court properly declined to suppress Holodick's
> composite sketch.

[Case 20-3119, DE 102 at 22.] Given the Seventh Circuit's finding that the motion to

suppress was properly denied, I cannot say trial counsel was ineffective for failing to object and actually get the sketch suppressed at trial.

### H.    Perceived Perjury

Farmer lists several instances of trial testimony where he believes the witnesses committed perjury, and his counsel failed to object. [DE 3179 at 43, 44-47, 48; DE 3185 at 10-11, 16-17, 19, 20-21, 23.] However, these witnesses (Detective Anthony Adams, Tiffany Malinuskas, Jason Gibbs, Joseph Gursky, and Detective Thomas Grabowski), did not actually provide testimony inconsistent with prior statements made under oath. Nor is there any other indication that they perjured themselves at trial.  Farmer's conclusion to the contrary is just that—a conclusion.

### I.    Failure to Include Claims on Appeal

Farmer claims his appellate counsel was ineffective for failing to include certain claims in his direct appeal. [DE 3185 at 23.]  First, this argument is not persuasive because even though Farmer was represented on appeal by an attorney, the Seventh Circuit accommodated his requests and allowed him to file a supplemental pro so brief. [Case 20-3119, DE 57.]  So any argument that Farmer wanted to raise that his counsel did not, he could have done in his own words.

Second, Farmer claims the appellate attorneys should have mentioned that at trial Glen Kok testified that after he saw the flyer with the sketch on it he had a conversation with Byron Wren who explained there was some kind of shooting on Calumet Avenue, but Wren didn't tell Kok who was involved. [Trial Tr. Vol. 5, DE 2472 at 823.]  But at this time, Wren was telling Kok he didn't know who was invovled in the

shooting which happened a few days *before* the murders. [Trial Tr. Vol. 4, DE 2471 at 794.] This was a different event than when Farmer killed the two gentlemen in the auto shop. On this testimony, Kok was sure of it—Farmer admitted to Kok that he used a hammer on the men in the auto shop, [*id.* at 792-94], and that is how they died. So I don't see how not drawing attention in the appellate brief to Glen Kok's testimony that he was not sure who was involved in the shooting in the days prior to the double homicide could have changed the result of the appeal.

The same goes for Farmer's argument that his appellate attorneys were ineffective for failing to argue that Glen Kok, Jason Gibbs, Tiffany Malinauskas, Joseph Gursky, and Katrina Coffman allegedly changed their sworn testimony after meeting with TFO Gootee and AUSA Nozick. [DE 3185 at 23.] First, Farmer does not give details about how their testimony allegedly was different before their trial testimony. And second, he does not establish how these supposed differences prejudice him.

### J.    Failure to Object to Drug Conspiracy Charge Because the Search Warrant Did Not List a Drug Conspiracy as a Charge

Farmer argues that his trial counsel was ineffective because they should have challenged the search warrant for failure to list "drug conspiracy" as an offense on the warrant's application sheet. [DE 3179 at 36.] However, the purpose of that particular search of Farmer's place in October 2018 was to obtain evidence related to the double homicide. [Case No. 2:18-mj-217, DE 1 at 3.] Therefore, there is nothing deficient about counsel's actions.

In sum, Farmer's claims of ineffective assistance of counsel all fall woefully short

of illustrating that his attorneys' performance "fell below an objective standard of

reasonableness" and that "but for counsel's unprofessional errors, the result of the

proceeding would have been different." *Strickland*, 466 U.S. at 688, 694.

*   *   *

One last note.  I have tried to address all of the arguments Farmer articulated in

his section 2255.  However, to the extent I have inadvertently not addressed an

argument that Farmer set forth in his voluminous pleadings, I now state for the record

that I have read all of his submissions with care, and I am convinced there has been no

violation of constitutional proportions that would warrant a granting of his section 2255

motion.  Mr. Mitchell, Farmer's principal trial counsel, did a stellar job of representing

Farmer, notwithstanding the results of the trial.  He filed numerous and thoughtful

pretrial motions and he aggressively attacked the government's case at every critical

step.  No one sitting through the trial could conclude that Mr. Mitchell was ineffective,

and indeed, it's not even close.  Farmer received a fair trial and was ably represented by

an eminently qualified lawyer.  At bottom, Farmer was convicted because the

government proved beyond a reasonable doubt that he was a Latin King and that,

among other things, he murdered two older gentleman to eliminate them as witnesses

to a prior act of racketeering.

### Certificate of Appealability

Pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings, a district

court must "issue or deny a certificate of appealability when it enters a final order

29

adverse to the applicant." A certificate of appealability may issue only if the applicant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a defendant must show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 475 (U.S. 2000) (internal quotation marks and citation omitted).

For the reasons set forth above, Farmer has not stated any grounds for relief under section 2255. The Court finds no basis for a determination that reasonable jurists would find this decision debatable or incorrect or that the issues deserve encouragement to proceed further. Therefore, a certificate of appealability will not be issued. 28 U.S.C. § 2253(c)(2); *Welch v. United States*, 136 S. Ct. 1257, 1263-64 (2016). If Farmer wishes to appeal this Opinion and Order, he must seek a certificate of appealability from the Court of Appeals under Federal Rule of Appellate Procedure Rule 22.

## Conclusion

For the foregoing reasons, Farmer's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [DE 3164 and DE 3179] is **DENIED**, and a certificate of appealability is also **DENIED**. The Clerk shall enter judgment against Farmer and in favor of the United States in the civil case opened on the § 2255, Cause No. 2:23-cv-151.

**ADDITIONALLY:**

30

The arguments set forth in Farmer's reply, which he filed as a separate motion [DE 3237] are **DENIED**.

Farmer's motion to file a reply memorandum that is 287 pages in length [DE 3238] is **DENIED** and this reply is **STRICKEN** as not within the page limitation.

Farmer's additional motion to amend his section 2255 petition [DE 3239] is **DENIED**.  Farmer was already granted one opportunity to amend.

Petitioner's motion requesting an update on his section 2255 petition [DE 3242] is **DENIED**.  To the extent Farmer requests the appointment of counsel in this motion, his request for counsel contained in DE 3242 is **DENIED**.

Farmer's motion attempting to show his 2255 was timely filed [DE 3243] is **DENIED AS MOOT**.  The government did not argue the petition was untimely, and the court believes it was timely filed.

The motion filed pursuant to an alleged violation of the Fifth Amendment and requesting dismissal of the case pursuant to Federal Rule of Civil Procedure 12(b) [DE 3249] is **DENIED**.

The motion entitled "Article III Motion to Resolve an Ongoing Controversy" [DE 3251] is **DENIED**.

Farmer's motions seeking another copy of his entire section 2255 [DE 3257, DE 3292] are both **DENIED**.  Farmer was already mailed a copy of the documents the Court considers his section 2255 petition. [*See* DE 3190.]

Farmer's motion requesting that the Court order his gang tattoos be removed and that his two front teeth be replaced [DE 3301] is **DENIED**.

Farmer's motion seeking relief from the judgment/order within 28 days of the judgment/order [DE 3314] is **DENIED**. If Farmer wishes to appeal this Opinion and Order, he must seek a certificate of appealability from the Court of Appeals under Federal Rule of Appellate Procedure Rule 22.

Farmer's Motion entitled "Judicial Bias, Abuse of Discretion, Procedural Due Process Violations Against Trial Judge Philip P. Simon Resulting in Defendant Farmer's False Imprisonment" [DE 3319] is **DENIED**.

Farmer's Motion to file a supplement instead of a motion to amend his section 2255 motion [DE 3333] is **DENIED**.

 The Clerk is ORDERED to mail a copy of this opinion to Farmer.

SO ORDERED.

ENTERED: May 23, 2024.

 /s/   Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT